26 C.C.P.A. (Patents)

## In re BECKER.

### Patent Appeal No. 4050.

Court of Customs and Patent Appeals.

Feb. 6, 1939.

Rehearing Denied March 6, 1939.

E. F. Wenderoth, of Washington, D. C. (John E. Lind, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting claims 5, 6, 7, 9, 12, 13, 15 and 16 of appellant's application for a patent. Claim 21 was rejected by the examiner but allowed by the board. Eleven other claims were allowed by both tribunals below. Claim 9 is an apparatus claim. The other appealed claims are process claims.

Claims 5 and 9 are illustrative of the claims in issue and read as follows:

"5. A method of making artificial sausage casings of pasty animal or vegetable fibrous masses comprising working said animal or vegetable masses into a plastic kneadable mass and then forming casings from said mass with a substantial portion of the fibers disposed transversely to the longitudinal axes of said casings.

"9. An apparatus for making sausage casings of animal or vegetable material from a plastic kneadable mass comprising a tubular housing, a substantially smooth cylindrical core rotating in said housing said housing serving as a bearing for said core, one end of said core being smaller than the inner diameter of said housing in order to form an annular space and means for leading plastic material into said annular space."

Appellant's application relates to an apparatus and a method for making artificial sausage casings. Animal or vegetable material, before it is put in the machine, is worked into a plastic, kneadable, fibrous mass. It is then put in the machine and finally extruded in tubular form through an annular passage in such a manner that a part of the fibers comprising the material lie transverse the length of the tube. The improvement intended, as stated in the application, is that instead of all the fibers running lengthwise in the wall of the tube, lateral strength is materially gained by having a part of them run transverse to the length of the casing. In the apparatus disclosed there is a core member adjacent the space through which the material is extruded. The core member has a rotary movement which causes the fibers to assume a position transverse to the casing. Before extrusion the material is forced through a space between two stationary concentric annular surfaces in the apparatus which serves to align the fibers on the inner and outer surfaces of the casing along its length, the fibers between the two surfaces of the casing retaining their transverse position.

The references relied upon are: Clark, 454,030, June 16, 1891; Edison, 704,698, July 15, 1902; Samuel, 1,656,681, January 17, 1928.

The board held that claims 5, 6, 7, 12, 15 and 16 were substantially met by the patent to Samuel; that apparatus claim 9 was broad enough to read on each of the patents to Edison and to Clark and affirmed generally the decision of the examiner, except that it allowed claim 21 as above set out.

The patent to Samuel discloses a process of manufacturing artificial sausage casings from a more or less pasty mass or emulsion comprising waste animal substances. Appellant concedes in his brief

that the material employed in his process is also composed of waste animal substances.

Appellant contends, however, that the material of Samuel is of soupy consistency while the material of appellant is "kneadable." We think it clear from the disclosure of Samuel that he provides for animal material of two consistencies, one of which is soupy and the other thick or pasty. This, we believe, is evident from his showing of two ways of producing his product. In one, a core is dipped into the emulsion and when it is removed a thin layer of emulsion adheres to it. When this dries it is removed from the core and is immediately ready as a sausage casing. Apparently the emulsion used in this process is soupy or thin.

He discloses further, however, a process providing for the manufacture of a continuous tube as follows:

"The more or less pasty emulsion is supplied by means of a funnel or the like to and through a nozzle having in its mouth a concentric core so that the ejection opening is of annular form. By employing a suitable pressure-agent, such as pressure-air, in connection with usual apparatus, devices or means for forcing the pasty emulsion through the annular orifice of the nozzle, with the agency of said pressure-air, a tubular thin-walled body of any desired length can be obtained, which when dried, may be severed into as many sections as desired to form the single artificial sausage skins."

We infer from the second disclosure that the material used must, of necessity, be of sufficient body, plasticity, or pastiness to be molded into tubular shape by the described extrusion, even though the tube must be dried immediately to prevent its collapse. A thin or soupy substance would certainly not be capable of being molded into a tube by the disclosed extrusion of the Samuel patent. Therefore, in so far as the expression "plastic kneadable mass" contained in appellant's application is concerned, we do not think that it is materially different from the pasty mass disclosed in Samuel's patent. In any event, if there be a difference, as contended by appellant, it is merely one of small degree. If a stiffer material were desired to suit certain circumstances, we think it would be quite obvious to one skilled in the art to make it that way.

Moreover, the Samuel patent discloses the use of a rotating cylindrical core in the making of the longer molds. Even though the tubular formation dries on this core, nevertheless, it appears to be used in the making of a long tube in the second heretofore described process and since it rotates adjacent to the inner wall of the tube it must, according to appellant's own theory, lay the fibers transverse to the length of the tube.

Since the improvement in the art, as set out in appellant's application, consists in the placing of a portion of the fibers in the mass in transverse position to add lateral strength to the casing, this improvement seems to be met by the patent to Samuel.

The examiner, however, did not rest his holding on the rejected process claims on the Samuel patent alone. He also relied upon the Clark reference in the rejection of each of the process claims and, in addition, on the Edison patent in rejecting claims 5, 6 and 7.

Even though it should be assumed, as contended by appellant, that the board misinterpreted the disclosure of the Samuel patent as to the use and function of the revolving core, it is quite clear that the other two cited patents disclose a rotary core concentric with a stationary, annular orifice.

The patent to Clark relates to a machine for forming seamless tubes of indefinite length from fibrous material, as paper, asbestos, or any similar fibrous substances mixed with a sizing or binding material. The material is beaten up with a liquid into a pulpy, pasty, or semi-liquid condition and conducted through a tube or pipe to a threaded, revolving mandril, tapered to an extruding orifice where the mandril has a smooth surface and rotates adjacent to a space which has a stationary outer wall parallel to the smooth portion of the revolving mandril. The smooth portion of the mandril constitutes a revolving core which forms the hole in the extruded tube as the material is forced by its threaded portion through the opening.

It is clear that the rotation of the thread in the Clark device causes the fibers to lay in many different positions relative to each other and as the mass is forced into the smooth annular space between the stationary wall and revolving core, obviously the fibers adjacent the core will be wiped

into transverse position to the tube being formed.

The patent to Edison relates to a process of treating fibers of annual growth for industrial purposes, such as grasses, grain, sugar-cane, etc. The product of the patent is used as fuel.

The material after being prepared is finally extruded in a continuous tube formed by being forced through an annular space bounded on the inside by a revolving cylindrical core concentric to a stationary pipe which forms the outer wall.

We think that the material of Edison would be subject to the same influence by the revolving core in transversely aligning fibers as the material of appellant as processed in his machine.

Appellant in his brief contends that because the examiner at one time allowed two of the process claims and later rejected them, doubt was present in the examiner's mind and that such doubt should have been resolved in favor of appellant. This contention is not tenable in light of the case of In re Ellis, 86 F.2d 412, 24 C.C. P.A., Patents, 759. In that case we said [page 414]: "There is nothing unusual, certainly, about an examiner changing his viewpoint as to the patentability of claims as the prosecution of a case progresses, and, so long as the rules of Patent Office practice are duly complied with, an applicant has no legal ground for complaint because of such change in view."

Appellant further contends that the patents of Clark and Edison are not from an analogous art and are not therefore pertinent as references.

It can be seen from what has already been said in this opinion that both these patents disclose the making of tubes from vegetable materials and all of appellant's rejected claims include vegetable masses as well as animal masses for material.

While the methods disclosed by Clark and by Edison are not for the purpose of making sausage casings, nevertheless, they show that in the process of making a seamless tube of fibrous materials, a portion of the fibers are laid transversely. It appears to us that each of the cited references clearly shows that such process is old.

The only difference between the disclosure of appellant and the disclosures of the Clark and Edison references is that appellant shows animal as well as vegetable fibrous material. This difference is not sufficient to make the appealed process claims patentable over these two patents. In the case of In re Williams, 87 F.2d 499, 501, 24 C.C.P.A., Patents, 861, 864, we said: "A process does not become patentably new merely because it is applied to a different object or material. In re Dreyfus, 65 F.2d 472, 20 C.C.P.A., Patents, 1204; In re Laughlin, 48 F.2d 921, 18 C.C. P.A., Patents, 1239."

We, therefore, affirm the decision of the board with respect to the appealed process claims.

Apparatus claim 9 was rejected by the board as being broad enough to read on each of the patents to Clark and Edison. The examiner rejected the claim on the patent to Clark alone.

We have carefully examined both patents and the application together with the drawings in view of the language of the claim and are convinced that each of the patents discloses an apparatus that possesses substantially all of the requirements of the claim. Each of the two patents discloses a tubular housing within which there is a smooth cylindrical rotating core. The core appears, especially in the Clark drawing, to have the tubular housing for its bearing. It is quite clear that in both these references the end of the core is smaller than the inner diameter of the housing so as to form an annular space where the tube is extruded and it is also obvious that each of the references discloses means for leading plastic material into the said annular space.

We can see no error in the concurring opinions of the tribunals below in rejecting apparatus claim 9 as not disclosing invention over the Clark and the Edison patents.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.